# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

PAIGE H. STRATFORD,

           Plaintiff,

v.                                         CIVIL ACTION NO. 2:17-cv-03963

KIM ROBINSON BROWN,

           Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kim Robinson Brown's Motion for Modification of Scheduling Order, (ECF No. 42), and Motion for Rule 35 Examination of Plaintiff Paige Stratford, (ECF No. 52). For the reasons provided herein, the Court **DENIES** both motions.

### I. BACKGROUND

This case arises out of injuries sustained by Plaintiff Paige H. Stratford in an automobile accident on September 19, 2015. (ECF No. 1 at ¶¶ 6–7.) At the time of the accident, Plaintiff was the passenger in a car that she alleges was driven negligently by Defendant Kim Robinson Brown. (*Id.*)

Plaintiff filed this suit on September 11, 2017. (ECF No. 1.) The Court entered a Scheduling Order on January 4, 2018, based on dates agreed to by the parties in their Federal Rule of Civil Procedure 26(f) report. (ECF No. 14.) That Scheduling Order set the following relevant deadlines: Plaintiff's expert witness disclosures under Federal Rule of Civil Procedure 26(a)(2)(A) and (B) were due May 24, 2018; Defendant's expert witness disclosures pursuant to the same were

due June 25, 2018; and the discovery deadline was July 23, 2018. (*Id.* at 1.) Defendant now asks the Court the amend these deadlines to allow him more time to conduct a Rule 35 examination of Plaintiff and, subsequently, produce expert reports.

Defendant's motion requesting the scheduling modification was filed on June 28, 2018. (ECF No. 42.) Plaintiff filed her response on July 5, 2018, (ECF No. 45), and Defendant replied on July 11, 2018, (ECF No. 51). Defendant's second motion requesting a Rule 35 examination of Plaintiff was filed on July 11, 2018, (ECF No. 52), and Plaintiff filed her response on July 24, 2018, (ECF No. 56).[1] As such, the motions are briefed and ripe for adjudication.

## II. LEGAL STANDARD

### A. *Rule 35 Examination*

Federal Rule of Civil Procedure 35 provides that "[t]he court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The rule further states that such an order "may be made only on motion for good cause . . . ." Fed. R. Civ. P. 35(a)(2)(A). Therefore, the rule encompasses a two-part test. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause for granting the motion. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964); *see also Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962) (noting that the words "on motion for good cause shown" in Rule 35 "indicate that there must be greater

---

[1] In keeping with the theme of these motions, Defendant filed an untimely reply on August 17, 2018, (ECF No. 60), and followed it with a Motion for Extension of Time for Filing His Reply Memorandum in Support of Defendant's Motion for Rule 35 Examination on August 20, 2018, (ECF No. 61). Plaintiff filed a response to that motion the next day, August 21, 2018, (ECF No. 62). As provided within this Memorandum Opinion and Order, the Court does not find persuasive Defendant's arguments in support of a Rule 35 examination of Plaintiff. Thus, the Court will not consider Defendant's untimely reply in support of his motion and **DENIES** his motion to file the reply out of time, (ECF No. 61).

showing of need . . . than under the other discovery rules"). As the Supreme Court noted in *Schlagenhauf*, "there are situations where the pleadings alone are sufficient to meet these requirements." 379 U.S. at 119 ("A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." (internal citation omitted)). Nevertheless, even when these conditions are met, the district court retains the sound discretion in determining whether to order examination. *See, e.g.*, *Ahmadi v. United Cont'l Holdings, Inc.*, No. 1:14–cv–00264–LJO–JLT, 2015 WL 3609319, at *2 (E.D. Cal. June 8, 2015); *Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D. Pa. 1990); *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970).

    B.   *Modification of Scheduling Order*

Scheduling orders may be modified only for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4); *see also* L.R. Civ. P. 16.1(f)(1). The Fourth Circuit has noted that the good cause standard found in Rule 16(b) focuses on the moving party's diligence. *Montgomery v. Anne Arundel Cty.*, 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam) (unpublished opinion) (citation omitted); *see also* 3 *Moore's Federal Practice* § 15.14[1][b], at 16–72 (Matthew Bender 3d ed. 2010) ("[A]lthough undoubtedly there are differences of views among district judges about how compelling a showing must be to justify extending the deadlines set in scheduling orders, it seems clear that the fact on which courts are most likely to focus when making this determination is the relative diligence of the lawyer or lawyers who seek the change."). "To establish good cause, the movant must show the deadlines cannot reasonably be met despite the movant's diligence; good cause is lacking if the movant has not acted diligently to comply with the

3

schedule." *Jackson v. United States*, No. 3:14-15086, 2016 WL 502056, at *2 (S.D. W. Va. Feb. 8, 2016) (citing *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (per curiam) (unpublished opinion)). "District Courts have discretion to consider other factors before amending a scheduling [order], which include: the danger of prejudice to the non-moving party, the length of delay and its potential impact on the proceeding, the movant's reason for the delay, and whether the movant acted in good faith." *Id.* (citing *Hunt v. Brooks Run Min. Co., LLC*, 51 F. Supp. 3d 627, 636 (S.D. W. Va. 2014)).

Additionally, when a motion to modify a deadline is filed after the deadline's passage, the party also must establish "excusable neglect." Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). As the Fourth Circuit has provided, "'excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996). This inquiry "is at bottom an equitable one, taking into account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395 (1993); *see also Thompson*, 76 F.3d at 534 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395) (noting that of all relevant factors to consider, "the reason for the delay, including whether it was within the reasonable control of the movant" carries the most significance).

### III. DISCUSSION

Defendant's Rule 35 motion requests an order requiring Plaintiff to submit to examination by a neurosurgeon "for the purpose of obtaining expert opinions as to whether or not, to a reasonable degree of medical certainty, Plaintiff will need future medical treatment . . . ." (ECF

4

No. 52 at 1.) While it is undisputed that Plaintiff's physical condition is at issue in this action, Defendant avers that Plaintiff has been examined by two physicians since the accident who have rendered radically different opinions. First, Defendant states that Plaintiff was examined by Dr. Brian Dalton, who noted on December 2, 2016, that Plaintiff "was asymptomatic and could follow up on an as-needed basis." (*Id.* at 2.) Notwithstanding that opinion, Defendant provides that Plaintiff's identified expert physician examined her on March 1, 2018, and concluded that "Plaintiff will require extensive future medical treatment, and substantial home support services." (*Id.* at 2–3.) Thus, Defendant argues that "[d]ue to the large disparity between the opinions of the two physicians who have had an opportunity to examine Plaintiff Paige Stratford, . . . it would be inequitable to deny the Defendant an opportunity to obtain an independent medical examination ("IME") of Plaintiff in an effort to reconcile the other physicians' opinions." (*Id.* at 3–4.)

Plaintiff's opposition to the motion is premised on two theories. First, Plaintiff argues that the motion is untimely as it was filed after the Court's Scheduling Order, (*see* ECF No. 14), required Defendant to serve his discovery requests and file his expert witness disclosures. (ECF No. 56 at 1.) Arguing that Federal Rules of Civil Procedure 26 and 35 should be read in conjunction, Plaintiff avers that an examination pursuant to Rule 35 is no different than other discovery tools used by a party that are subject to the abovementioned deadlines. (*Id.* at 1–2 (noting that the motion was filed sixteen days after Defendant's expert reports were due and thirty-four days after Defendant was required to serve all discovery requests).) Second, Plaintiff argues that notwithstanding the motion's untimeliness, Defendant has not established good cause under Rule 35. Plaintiff disputes the rationality of relying on the notation by Dr. Dalton on December 2, 2016, that Plaintiff was asymptomatic to conclude that Plaintiff would not need to undergo an

5

IME by an expert of Defendant's choosing. (*Id.* at 9–10.) Plaintiff also contests Defendant's characterization of a "large disparity" between the opinions of Dr. Dalton and Dr. Richard Bowman, Plaintiff's identified expert. (*See id.* at 10–11 ("[I]f [Defendant] had only been diligent in taking Dr. Dalton's deposition at an early date . . . he would have found out . . . that a deterioration of the Plaintiff's condition could be expected requiring future medical care.").)

As a preliminary matter, the Court is persuaded that Rules 26 and 35 act in tandem when determining whether to permit a Rule 35 examination requiring subsequent disclosure of the related report. While the rules are distinct in terms of the content required in the generated reports, the purpose behind the rules, and the witnesses to whom the rules apply, *see Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 419 n.2 (S.D. Tex. 2012), there is a ripple effect necessarily caused by a Rule 35 examination ordered after Rule 26 disclosure deadlines. The Court adopts the following rationale for this reading of the two rules from the *Diaz* Court:

> [T]he Rule 35 examination is a discovery tool not unlike depositions under Rules 30 and 31, Rule 33 interrogatories, or Rule 34 requests for production. Similar to Rule 35, Rules 30, 31, 33, and 34 do not provide a specific deadline by which to submit these discovery requests because it is understood that *all* discovery tools are generally subject to the overall discovery deadline. However, when a party relies on the discovery tools described in Rules 30, 31, 33, and 34 to obtain "the facts or data [that will be] considered by the [expert] witness in forming [the expert's opinion]," *see* Fed. R. Civ. P. 26(a)(2)(B), the party is usually cognizant of the need to complete this discovery sufficiently in advance of the Rule 26 expert report deadline. A Rule 35 examination should be no different than any other discovery tool that a party would use to obtain evidence to be considered by its testifying experts in forming their opinions and creating the related reports.

279 F.R.D. at 418 (emphasis in original) (first alteration added) (internal citations omitted).

First, the Court finds that Defendant's Rule 35 motion is untimely. According to the Scheduling Order entered in this case, Defendant was required to "serve all discovery requests by June 7, 2018," and to file all expert disclosures by June 25, 2018. (ECF No. 14 at 1–2.) Despite

6

these deadlines, Defendant did not file his discovery motion until July 11, 2018. (ECF No. 52.) Given the relationship between Rule 26 and Rule 35 as explained above, Defendant's motion was filed outside the relevant time frame by which he must have notified Plaintiff of the intention to conduct such an examination. (*See Bellew v. Ethicon, Inc.*, Civil Action No. 2:13-cv-22473, ECF No. 97 at 3 ("[W]hen the independent medical examination is performed for the purpose of providing, developing, or supplementing expert opinions (for instance, on topics such as the causation or extent of alleged injuries), then courts tend to agree that the witness and report are subject to the Rule 26(a)(2) deadlines.").)

Further, even if the motion was timely filed, the Court does not find that good cause exists to require a Rule 35 examination at this stage of the litigation. Defendant relies on a patient note written by Dr. Dalton on December 2, 2016, (*see* ECF No. 42-1 at 2), in arguing he was unaware that Plaintiff would require any future medical treatment and, thus, that an IME was necessary until after Dr. Bowman's March 1, 2018 evaluation of Plaintiff. (*See* ECF No. 52 at 2.) The Court finds that Defendant's claim he was hindered from realizing the necessity of an IME until earlier this year is unreasonable and contradicted by the facts. *Cf. Miksis v. Howard*, 106 F.3d 754, 758–59 (7th Cir. 1997).

Defendant placed on the record two patient notes written by Dr. Dalton—one from June 28, 2016, and another from December 2, 2016. (ECF No. 42-1.) Those notes indicate that the visits were follow-up appointments from Plaintiff's "post cervical fusion for hangman's fracture." (*Id.* at 1.) As Defendant points out in his motion, those notes state that Plaintiff's "cervical fusions appear to be well-healed and [that] she [was] currently asymptomatic" as of December 2, 2016. (*Id.* at 2.) Plaintiff, however, put on the record a third patient note written by Dr. Dalton on April

7

21, 2016, that was provided to Defendant during discovery. (ECF No. 56-1 at 1; *see also* ECF No. 56 at 11 n.5 ("Brown was provided this record in Plaintiff's Rule 26(a)(1) Disclosures filed on January 18, 2018.").) That document, which also resulted from a follow-up appointment, provides the following observation by Dr. Dalton: "X-rays with flexion-extension show a beautiful fusion although she does have swan-neck deformity centered around the 4-5 disc space. More than likely she damaged ligaments posteriorly here." (ECF No. 56-3.) As Dr. Dalton elaborated in his deposition, swan neck deformity is a condition that is permanent in nature and can get worse over time. (ECF No. 56-2 at 3.)

Disregarding Dr. Dalton's note about swan neck deformity, the Court finds that Defendant was put on notice as to the possible need for future medical care at multiple times during this suit's pendency. As such, any claim that Defendant was unaware of Plaintiff's possible need for future medical expenses until May 25, 2018, appears disingenuous. First, the Complaint itself, filed on September 11, 2017, explicitly states that Plaintiff would be seeking future medical expenses in this litigation. (ECF No. 1 at ¶ 12.) Even if the Complaint itself never used phrases such as "[f]uture medical expenses," "[f]uture pain and suffering," "permanent impairment," or "[d]iminished capacity to enjoy life," which it does, the nature of Plaintiff's alleged injuries suggests even to medical nonprofessionals the potential need for future treatment and care. (*See id.* at ¶¶ 9–12; *see also* ECF No. 45 at 5 & n.2.) A couple months after the Complaint's filing, on November 29, 2017, Plaintiff sent a demand letter to Defendant's insurance company that explained in more detail the seriousness and permanent nature of Plaintiff's injuries. (*See* ECF No. 45-2 at 2; ECF No. 45 at 6–7.) Even in light of Dr. Dalton's note that Plaintiff was asymptomatic on December 2, 2016, prudent litigators would most likely have conducted an

8

independent evaluation earlier in the life of this action.

Similar to the Complaint, Plaintiff's Rule 26(a)(1) disclosures clearly informed Defendant that Plaintiff would be seeking damages in the forms of "[f]uture medical, life care and household service costs;" "future loss of earnings and/or loss of earning capacity;" and "future pain and suffering, . . . future mental anguish, permanent disfigurement and scarring, permanent disability, and . . . future loss of enjoyment of life." (ECF No. 45-3 at 2; *see also* ECF No. 45 at 7–8.) Those disclosures were made on January 18, 2018, (*see* ECF No. 16)—over five months before Plaintiff's Rule 26(a)(2) disclosures. This contradicts Defendant's daring claim that "[n]othing in the records produced by Plaintiffs in January of [2018] indicated any need for medical treatment beyond December 2016." (ECF No. 42 at 2.) Despite all the early promptings that Plaintiff would seek damages for future care, Defendant still waited until May 21, 2018, to send to Plaintiff written discovery requests related to her injuries. (*See* ECF No. 28.) At that time, Defendant had not even noticed depositions of Plaintiff's medical experts. (*See* ECF Nos. 36, 37 (filed on June 12, 2018).)

All this information serves to paint a vivid picture of Defendant's failure to remain attentive to this litigation. At this belated point in the Scheduling Order, allowing an extension of the deadlines due to Defendant's neglect would only serve to prejudice Plaintiff. *Cf. Hunt*, 51 F. Supp. 3d. at 637. Based on the record in this case, the deadlines in the Scheduling Order could have been met had Defendant acted diligently. *See Jackson*, 2016 WL 502056, at *2. Defendant implies that the requested continuance could affect future dates related to dispositive motions, (ECF No. 42 at 4), which would negatively impact these proceedings, even if only slightly. The reason for the delay is unjustified, and the Court finds that good cause is lacking. *See* Fed. R.

9

Civ. P. 16(b)(4). Therefore, the Court finds that Defendant has shown a lack of diligence by seeking a Rule 35 examination after the Rule 26 deadline to designate experts and produce reports and **DENIES** Defendant's Motion for Rule 35 Examination. (ECF No. 52.)

In Defendant's other pending motion, he requests an additional sixty days to produce expert reports and an extension of the discovery deadline. (ECF No. 42 at 3.) Defendant notes the disclosures that have taken place thus far in this litigation and opines that he was unaware that Plaintiff would need future medical treatment until Plaintiff's medical expert provided as such in a report. (*Id.* at 2.) Based on that knowledge, supposedly revealed to Defendant on May 25, 2018, Defendant attempted to find a medical expert of his own to review the report and conduct an IME, if necessary, in support of his defense. (*See id.*) Defendant located an expert, but an examination of Plaintiff has never been arranged. Further, Defendant has retained a vocational expert, but that expert "is also unable to complete her report in this matter until she has had the opportunity to review the findings and opinions of Defendant's medical expert." (*Id.* at 3.)

The Court notes that Defendant himself was instrumental in setting the deadlines with which he has failed to comply and now seeks to change. The Court prepares its scheduling orders with significant input from the parties via their Rule 26(f) report, and this case is unexceptional in that respect. (*See* ECF No. 13.) Because Defendant had ample opportunity to realize that Plaintiff was seeking damages for future treatment, Defendant could have moved to extend the deadlines at any point prior to the June 25, 2018, deadline for Defendant's expert witness disclosures. However, Defendant chose not to do so and, instead, filed inadequate disclosures before moving for an extension three days after that deadline. Everything was in reasonable control of Defendant, which leads the Court to conclude that no excusable neglect exists to modify

the scheduling order now. *See Thompson*, 76 F.3d at 534; Fed. R. Civ. P. 6(b). Further, the Court rejected Defendant's request to conduct a Rule 35 examination after discovery closed. There similarly is no good cause to modify the current Scheduling Order. Accordingly, the Court **DENIES** the Motion for Modification of Scheduling Order, (ECF No. 42), and will proceed toward resolving Plaintiff's Motion for Partial Summary Judgment. (ECF No. 58.)

### IV. CONCLUSION

For the reasons above, the Court **DENIES** Defendant's Motion for Modification of Scheduling Order, (ECF No. 42), and Motion for Rule 35 Examination, (ECF No. 52).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 26, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE