# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

PAIGE H. STRATFORD,

                 Plaintiff,

v.                          CIVIL ACTION NO. 2:17-cv-03963

KIM ROBINSON BROWN,

                 Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Paige H. Stratford's Motion for Partial Summary Judgment. (ECF No. 58.) For the reasons provided herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I. BACKGROUND

This case arises out of injuries sustained by Plaintiff in an automobile accident on September 19, 2015. (ECF No. 1 at ¶¶ 6–7.) At the time of the accident, Plaintiff was the backseat passenger in a car driven by Defendant Kim Robinson Brown. (*Id.*) Brown was traveling north on U.S. Route 119 in Kanawha County, West Virginia, commonly known as Corridor G, when he made a left-hand turn across the southbound lanes in front of another car. (ECF No. 59 at 2.) The other car, driven by Jennilee Cantrell ("Ms. Cantrell"), collided into Defendant's car. (*Id.*) As a result of Defendant's failure to yield right-of-way, which Defendant concedes, (*see* ECF No. 58-1 at 4; ECF No. 65 at 1), Plaintiff was transported by ambulance to Charleston Area Medical Center General ("CAMC") where she was treated for injuries, (ECF No.

58-2 at 2). Plaintiff was pregnant and expecting at the time of the accident. (ECF No. 66-4 at 1.)

Plaintiff filed this suit on September 11, 2017. (ECF No. 1.) She asserts a single negligence cause of action[1] and seeks all damages permitted under West Virginia law, including past medical expenses, past pain and suffering, future medical expenses, future pain and suffering, physical limitations and permanent impairment, diminished capacity to enjoy life, annoyance and inconvenience, and loss of earning capacity. (*Id.* at 2–3.) The pending Motion for Partial Summary Judgment was filed on August 13, 2018. (ECF No. 58.) Defendant filed his response on August 27, 2018, (ECF No. 65), and Plaintiff's reply was filed on August 31, 2018, (ECF No. 66). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress &*

---

[1] The Complaint originally included Plaintiff's husband, Chad V. Stratford, as a named Plaintiff in an effort to present a loss of consortium claim. (ECF No. 1 at 1, 3.) However, in accordance with a stipulation of dismissal filed by the parties, (ECF No. 41), Mr. Stratford was dismissed from this action and terminated from the docket on July 9, 2018. (ECF No. 46.) As such, the loss of consortium claim is no longer live.

*Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

Finally, courts do not automatically grant motions for summary judgment when they are unopposed. *See* Fed. R. Civ. P. 56(e). The court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

### III. DISCUSSION

Plaintiff's motion seeks summary judgment on the following seven issues: Defendant's breach of the standard of care, Plaintiff's comparative fault, nonparty fault of Ms. Cantrell, other specifically asserted affirmative defenses, any other matter constituting an avoidance or affirmative defense, past medical bills, and future lifecare costs and loss of household services. (ECF No. 58 at 1–2.) Defendant does not oppose the motion on the first five grounds previously listed. (ECF No. 65 at 1–2.) However, Defendant argues that Plaintiff is not entitled to summary judgment on the last two issues of past medical bills and future lifecare costs and loss of household

services.  (*Id.* at 2, 6.)  The Court will first review the undisputed claims, *see Robinson*, 599 F.3d at 409 n.8; Fed. R. Civ. P. 56(e), before proceeding to analyze the two contested issues.

  A. *Undisputed Claims*

  1. <u>Defendant's Breach of the Standard of Care</u>

Plaintiff first moves for summary judgment on the issue of whether Defendant is liable for breaching the standard of care.  To prevail on a negligence claim, "it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty in which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby, resulting proximately from the breach of that duty."  *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)).  Thus, the current inquiry touches on the first two of these elements as "it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff."  *Id.* (quoting Syl. pt. 1, *Parsley v. Gen. Motors Acceptance Cop.*, 280 S.E.2d 703 (W. Va. 1981)).

While driving along Corridor G, Defendant had a duty to comply with West Virginia laws regarding a proper left turn across the lanes of opposing traffic.  Pursuant to West Virginia Code:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard . . . .

W. Va. Code § 17C-9-2; *see also* § 17C-8-8 (regarding general turning movements and required signals).  In addition to this statutory duty, Defendant had a general duty to act as "a reasonably prudent person in the same or similar circumstances" when turning left across oncoming traffic on

4

U.S. Route 119. *See McMillen v. Dettore*, 242 S.E.2d 459, 462 (W. Va. 1978) (discussing proper jury instructions related to an allegedly negligent left-turning motorist at an intersection).

Based on the depositions of Defendant, his wife, and three eye witnesses, as well as the police report, it is clear that Defendant breached the duty of care. Defendant testified that he was "going north on [Route] 119 and making a left-hand turn across the southbound lanes of Corridor G." (ECF No. 58-1 at 2.) This triggered his duty to act with reasonable care and in compliance with the law in making that turn. Nevertheless, Defendant admits that Ms. Cantrell "had the right-of-way at the time of the accident" and that he is to blame for the accident. (*Id.* at 3–4 (commenting that he "probably shouldn't have" turned left when he did).) Defendant's wife, who was in the front passenger seat of the car, testified that she felt—both at the time of the accident and at the time of her deposition—that the collision was Defendant's fault. (ECF No. 58-4 at 2–3.)

Barbara Dixon, who was following the vehicle driven by Ms. Cantrell, testified that Defendant "didn't have enough time whatsoever" to make the turn, that Ms. Cantrell had no time to avoid the collision, and that the accident was "absolutely" Defendant's fault. (ECF No. 58-3 at 3–5, 7–8.) Additionally, Plaintiff submitted the depositions of Brett and Tressia Cabell, who witnessed the accident and subsequently got out of their own car to help the individuals involved. (ECF No. 58-5 at 3.) Both Mr. and Mrs. Cabell testified that Ms. Cantrell had no time to avoid the collision and that Defendant was wholly at fault for the accident. (*Id.* at 2–3; ECF No. 58-6 at 2.) This testimony is supported by the police report written by Corporal J. Rinick of the Charleston Police Department. (*See* ECF No. 58-2.) Cpl. Rinick interviewed Ms. Dixon and Mr. and Mrs. Cabell following the accident, noting that "all of the witnesses said that [Defendant's

5

vehicle] pulled directly out in front of [Ms. Cantrell's vehicle] and that [Ms. Cantrell's vehicle] did not have any time to slow down or avoid colliding with [Defendant's vehicle]." (*Id.* at 2 (emphasis removed).) The report also notes that Defendant's failure to yield right-of-way contributed to the crash while Ms. Cantrell in no way contributed to it. (*Id.* at 6, 10.) Defendant presents no contradicting evidence on this point.

In light of this evidence, Plaintiff has met her burden of showing that no genuine issue of fact exists as to Defendant's breach of the standard of care. *See Anderson*, 477 U.S. at 250; *Barwick*, 736 F.2d at 958. Thus, the Court **GRANTS** summary judgment in Plaintiff's favor on this issue. *See* Fed. R. Civ. P. 56.

2. Plaintiff's Comparative Fault

In West Virginia, "a plaintiff may recover unless his fault 'equals or exceeds' the negligence of all other parties . . . ." *Tug Valley Pharmacy, LLC v. All Plaintiffs Below in Mingo Cty.*, 773 S.E.2d 627, 634 (W. Va. 2015); *see also* Syl. pt. 3, *Bradley v. Appalachian Power Co.*, 256 S.E.2d 879 (W. Va. 1979) ("A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident."). Thus, to assert the affirmative defense of comparative negligence, Defendant must prove that Plaintiff's negligence or fault is equal to or exceeds that of Defendant, Ms. Cantrell, and/or any other involved party.

While Defendant pleaded comparative negligence in his initial response to the Complaint, (ECF No. 11 at 3–4),[2] Plaintiff has presented uncontroverted evidence that Defendant has

---

[2] The Court notes that Defendant also asserted contributory negligence in that same paragraph of his Answer. However, the pure contributory negligence defense has not been available in West Virginia since the State's Supreme Court of Appeals shifted to a modified comparative fault system. *See Bradley v. Appalachian Power Co.*, 256 S.E.2d 879, 885 (W. Va. 1979) ("Our present judicial rule of contributory negligence is therefore modified to provide that a

abandoned that defense. During discovery, Plaintiff's Seventh Interrogatory requested that Defendant "state separately and individually each and every fact or contention upon which [he] rel[ies] in asserting that the Plaintiff, and or any other person or entity, is somehow at fault for the incident which is the subject of the complaint." (ECF No. 58-7 at 4.) Defendant wrote the following in response: "The Defendant does not assert that either Plaintiff is at fault for the accident which is the subject of the complaint." (*Id.* (referring to both Plaintiff and her husband, who has since been terminated from this action).)

Because Plaintiff has provided evidence that Defendant no longer asserts the defense of comparative negligence and because Defendant admits as much by not opposing this part of Plaintiff's motion, Plaintiff has met her burden in proving that she is entitled to summary judgment on this issue. *See Anderson*, 477 U.S. at 250; *Barwick*, 736 F.2d at 958. Therefore, Defendant is not entitled to the defense of Plaintiff's comparative fault, and the Court **GRANTS** summary judgment to Plaintiff on this ground.

    3.   <u>Nonparty Fault of Ms. Cantrell</u>

Under West Virginia law, the fault of parties and nonparties alike may be considered when the trier of fact is assessing percentage of fault. W. Va. Code § 55-7-13d(a)(1) (noting that a nonparty's fault may be considered "regardless of whether the person was or could have been named as a party to the suit"); *see also Modular Bldg. Consultants of W. Va., Inc. v. Poerio, Inc.*, 774 S.E.2d 555, 565 (W. Va. 2015); *Louk v. Isuzu Motors, Inc.*, 479 S.E.2d 911, 927 n.14 (W. Va. 1996). "Fault of a nonparty shall be considered . . . if a defending party gives notice no later than one hundred eighty days after service of process upon said defendant that a nonparty was wholly

---

party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident.")

or partially at fault." § 55-7-13d(a)(2). Such notice, which must be served upon the opposing party and filed with the Court, must "set[] forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault . . . ." *Id.* Given this notice requirement, "[t]he burden of alleging and proving comparative fault shall be upon the person who seeks to establish such fault." § 55-7-13d(d).

Here, Defendant filed a Notice of Nonparty Fault on January 10, 2018.[3] (ECF No. 15.) In the notice, Defendant names Ms. Cantrell as a nonparty "wholly or partially at fault for the accident that forms the basis of Plaintiff[']s Complaint . . . ." (*Id.* at 1.) He further provides her last known address and the following statement:

> Upon information and belief, Jennilee Cantrell was the owner and operator of a 2009 Honda Accord that collided with the vehicle in which Plaintiff Paige Stratford was a passenger on September 19, 2015, on U.S. Route 19 [sic: 119] in Kanawha County, West Virginia, as alleged in Plaintiff[']s Complaint. Defendant Kim Robinson Brown states that Jennilee Cantrell negligently caused or contributed to the subject accident, and is liable to the Plaintiff[] for any and all damages arising therefrom.

(*Id.*) A few months after providing the notice of nonparty fault, Defendant responded in part to one of Plaintiff's interrogatories regarding comparative fault as follows: "The Defendant believes that Jennilee Cantrell caused or contributed to the accident at issue, because she appeared to be traveling at a high rate of speed immediately prior to the accident, and did not appear to take any evasive action to avoid the collision with the Defendant's vehicle." (ECF No. 58-7 at 4.)

At first glance, Defendant's Notice of Nonparty Fault does not appear to provide a statement that sets out Defendant's "basis for believing" Ms. Cantrell to be at fault for the accident.

---

[3] This notice was timely under W. Va. Code § 55-7-13d(a)(2) as Defendant was personally served with the Complaint on November 10, 2017. (ECF No. 4.)

*See* § 55-7-13d(a). Nevertheless, the evidence provided by Plaintiff consistently shows that Ms. Cantrell was not speeding, did not have time to react and avoid the accident, and otherwise did not contribute in any way to the collision. These are supported by the testimony of Barbara Dixon, Brett Cabell, and Tressia Cabell, who all witnessed the accident and testified in support of the conclusions that Ms. Cantrell was not speeding and had no time whatsoever to react when Defendant turned left directly in front of her. (*See* ECF No. 58-3 at 3–4, 7–8; ECF No. 58-5 at 2–3; ECF No. 58-6 at 2. *But see* ECF No. 58-4 (Ruth Brown Dep.) at 3 ("Q. And do you think that the other driver did anything wrong at all in the accident? A. Well, because I don't know how fast she was driving, I don't have any idea.").) Cpl. Ridick's report also states, based on the eye witness testimony, that Ms. Cantrell "did not have any time to slow down or avoid colliding with" Defendant's vehicle. (ECF No. 58-2 at 2.) The report also provides that Ms. Cantrell did not contribute to the crash, in part, because she was not exceeding the posted speed limit, driving too fast for the conditions, or being distracted in any way. (*Id.* at 10.)

Accordingly, Plaintiff has met her burden of showing that Ms. Cantrell bears no fault for the accident. *See Anderson*, 477 U.S. at 250; *Barwick*, 736 F.2d at 958. Even if Defendant's Notice of Nonparty Fault was substantively sufficient under W. Va. Code § 55-7-13d, he has presented no evidence resulting from discovery that lends any support to this defense or creates a genuine dispute of material fact. *See Catrett*, 477 U.S. at 322. Thus, the Court **GRANTS** summary judgment to Plaintiff on the defense of nonparty fault.

    4.    <u>Other Affirmative Defenses Specifically Asserted</u>

While the burden of proving an affirmative defense rests on a defendant, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007), a defendant "is not restricted to relying upon the

plaintiff's allegations for such proof," *Baron v. Directv, LLC*, 233 F. Supp. 3d 441, 445 (D. Md. 2017); *see also Grim v. E. Electric, LLC*, 767 S.E.2d 267, 277 (W. Va. 2014). Beyond the affirmative defenses already discussed above, Defendant raised the following defenses in his initial response to the Complaint:

> [A]ccord and satisfaction; arbitration and award; . . . assumption of the risk; sudden emergency; discharge and bankruptcy; duress; waiver; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of repose; acquiescence; running of the statute of limitations; lack of personal jurisdiction; lack of service of process; improper service of process; improper notice; [and] improper venue . . . .

(ECF No. 11 at 3–4 ("Third Defense").)

Defendant has presented no arguments or evidence supporting any of these affirmative defenses. In fact, Defendant's response to the pending motion states that with regard to these defenses, he concedes that there is a lack of evidence supporting the applicability of any of the aforementioned defenses and that Plaintiff is entitled to summary judgment on the issue of these explicitly mentioned affirmative defenses. (ECF No. 65 at 1–2.) As such, Defendant has not met and cannot meet his burden of proving any of the affirmative defenses he originally claimed in his Answer. The Court, therefore, **GRANTS** summary judgment to Plaintiff on this issue. *See* Fed. R. Civ. P. 56.

5. <u>Any Other Matter Constituting an Avoidance or Affirmative Defense</u>

It is well established that "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). "When a party fails to assert an affirmative defense in the appropriate pleading, such a failure will sometimes result in a binding waiver." *In re FirstPay, Inc.*, 391 F. App'x 259, 269–70 (4th Cir. 2010) (per curiam) (unpublished opinion) (citing *Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 271 (4th Cir. 2003)).

As this Court has previously stated, defendants must affirmatively state "*any specific defense*" in its pleading. *See Commerce & Indus. Ins. Co. v. Newhall Contracting, Inc.*, No. 2:13–cv–30260, 2014 WL 4161971, at *2 (S.D. W. Va. Aug. 19, 2014) (emphasis in original); *see also* Fed. R. Civ. P. 8(b), (c). In other words, if an affirmative defense is pleaded too generally and does not give a plaintiff "fair notice of the nature of the defense," then the defendant will not be entitled to its protection. *Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004) (per curiam) (unpublished opinion) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274 (2d ed. 1990)).

At the end of the Answer's Third Defense, Defendant includes the following catch-all phrase in listing what defenses he believes are applicable in this case: "[A]ny other matter constituting an avoidance or affirmative defense." (ECF No. 11 at 4.) However, in response to Plaintiff's Thirteenth Interrogatory, in which she asks Defendant to "identify any other affirmative defenses upon which [he] rel[ies] as referenced in [his] Third Defense," Defendant does not provide any meaningful response beyond a general objection that the interrogatory seeks attorney work product and is premature as discovery was not completed at the time. (*See* ECF No. 58-7 at 7.) Even though discovery has now concluded, though, Defendant still has not specifically proffered any affirmative defense during the course of this litigation not listed in his Answer. Thus, to allow Defendant to argue a new affirmative defense at this stage, which Defendant has not done, would result in "prejudice or unfair surprise" to Plaintiff and cannot be allowed. *See Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985).

For the reasons above, Defendant has not met his burden of showing that any other avoidance or affirmative defense applies to these circumstances to prevent judgment in Plaintiff's

favor. *See Goodman*, 494 F.3d at 464. Further, there is no genuine dispute of material fact on this issue. (*See* ECF No. 64 at 2 (noting that Defendant does not oppose the motion on this ground).) Accordingly, the Court **GRANTS** summary judgment in Plaintiff's favor on this issue. *See Catrett*, 477 U.S. at 322.

    B.   *Disputed Claims*

    1.   Past Medical Bills

"Generally, a tort plaintiff is entitled to all damages proximately caused by a wrongdoer's actions." *Cook v. Cook*, 607 S.E.2d 459, 462 (W. Va. 2004). This ensures that the plaintiff is "fairly and adequately compensate[d] . . . for the injuries and losses sustained." *Id.* (quoting *Flannery v. United States*, 297 S.E.2d 433, 435 (W. Va. 1982)). Thus, compensatory damages include actual losses, such as past medical expenses. *See Hewett v. Frye*, 401 S.E.2d 222, 223–24 (W. Va. 1990). "Proof that medical, hospital and doctor bills were paid or incurred because of any illness, disease or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable." W. Va. Code § 57-5-4j; *see also Snyder v. Woods*, 364 S.E.2d 269, 270–71 (W. Va. 1987).

Here, Plaintiff claims that she is entitled to $128,941.36 in past medical expenses.[4] (ECF No. 59 at 13–14.) This figure is devised from medical bills summarized by Plaintiff in a chart attached to her affidavit. (*See* ECF No. 58-8 at 2–7.) Copies of the medical bills are also attached in full to Plaintiff's motion. (*See* ECF No. 58-9.) Plaintiff argues that her affidavit coupled with

---

[4] While Plaintiff's medical bill summary and the affidavit of her expert physician indicate that she incurred $135,081.36 in medical expenses, (ECF No. 58-8 at 7; ECF No. 58-10 at 2 ¶ 8), Plaintiff only seeks $128,941.36 in medical expenses related to the subject automobile accident, (ECF No. 58-8 at 1 ¶ 3). In response to Defendant's contention that the charges related to Plaintiff's emergency delivery of her child would have been incurred anyway, (ECF No. 59 at 13 n.2), Plaintiff's expert, Dr. Richard G. Bowman, II, researched and opined that the cost of a normal vaginal delivery is $6,140, (ECF No. 58-10 at 2 ¶ 8). Thus, Plaintiff deducted that $6,140 from the total she claims resulted from the accident. (ECF No. 59 at 13 n.2.)

the actual medical bills are "sufficient to prove that (a) she incurred medical, hospital, and doctor bills, (b) as a direct result of injuries she received in her September 19, 2015 crash and (c) those bills were reasonable and necessary." (ECF No. 59 at 13 (citing W. Va. Code § 57-5-4j).)

Defendant argues that there remains a genuine issue of material fact with respect to the total medical expenses attributed to the delivery of Plaintiff's baby and that the testimony of Plaintiff and Dr. Bowman are insufficient to prove both the amount associated with the delivery and whether "the medical bills she is claiming are all related to the accident at issue." (ECF No. 65 at 3–4 (citing *Pygman v. Helton*, 134 S.E.2d 717 (W. Va. 1964)).) Defendant avers that because Dr. Bowman "is not an obstetrician or gynecologist" and "was not privy to [Plaintiff's] pregnancy condition" at the time of the accident, "he could not render an opinion as to whether or not Plaintiff would have been able to have a successful vaginal delivery of her baby, or whether a caesarean section [("c-section")] would have been necessary in any event." (*Id.* at 4–5 (citing ECF No. 65-2 at 2–3) (noting that Dr. Bowman is a physiatrist and, therefore, unqualified to render an opinion of this kind under Federal Rule of Evidence 702).)

Plaintiff's reply first argues that Defendant's response "fails to identify a single specific medical bill or charge for medical services which he asserts is not recoverable." (ECF No. 66 at 6 (noting that this omission leaves "the Court to guess and speculate as to which one(s) he objects to").) Plaintiff notes that the response is not accompanied by any affidavit or expert testimony describing why certain bills are not recoverable. (*Id.*) She further argues that Defendant mischaracterizes Dr. Bowman's testimony and ability to opine that the costs of Plaintiff's c-section, in addition to the other medical expenses from CAMC, were a result of the accident. (*Id.* at 7.) Plaintiff also contends that Dr. Bowman's testimony is admissible and reliable despite the

fact that it is based, in part, on what Dr. Michael Lao told him about the need for Plaintiff's emergency c-section. (*Id.* at 8–9 (arguing that Defendant's reliance on *Cohen v. Perales*, 412 F.2d 44 (5th Cir. 1969), is misplaced).)

The Court notes that Defendant is not challenging that the expenses listed by Plaintiff in Exhibits 8 and 8A to her motion were actually incurred. (*See* ECF No. 65 at 3.) Rather, Defendant is disputing that those costs—specifically, the costs related to Plaintiff's emergency c-section—were related to the subject accident. (*Id.*) As the Fourth Circuit has long held, a motion for summary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951), *quoted in Doe v. Am. Nat'l Red Cross*, 848 F. Supp. 1228, 1231 (S.D. W. Va. 1994).

Here, it is clear that the parties disagree as to whether all the expenses incurred by Plaintiff related to her c-section delivery were a result of the vehicle accident. Both parties have provided at least some evidence that they believe supports their respective positions. (*See* ECF Nos. 58-8 (Stratford Aff.); 58-9 (medical bills); 58-10 (Bowman Aff.); 65-1 (Stratford Dep.); 65-2 (Bowman Dep.).) Plaintiff avers that Defendant "fails to identify a single specific medical bill or charge" that is not recoverable. (ECF No. 66 at 6.) Even recognizing that Defendant has not given a line-item assessment of unrecoverable expenses, he is clear that Plaintiff's medical bills incurred from CAMC associated with her c-section are the ones he believes are not related to the accident for damage purposes. (ECF No. 65 at 3.) He further brings into question the reliability of Dr. Bowman's testimony as Dr. Bowman is not an obstetrician or gynecologist and was unfamiliar

14

with Plaintiff's pregnancy or related medical conditions prior to the subject accident. (*Id.* at 4–5.) Cross-examination will allow the trier of fact to determine the reliability of those opinions.

Consequently, even considering Plaintiff's and Dr. Bowman's affidavits,[5] "a reasonable jury could return a verdict for [Defendant,] the nonmoving party." *Anderson*, 477 U.S. at 248. The Court finds that as to Plaintiff's past medical bills, there is a genuine dispute of material fact that prevents the Court from awarding summary judgment on the issue at this stage because it is more appropriate for the trier of fact to determine what portion of those expenses were a result of the subject accident. *See Adickes*, 398 U.S. at 157 (noting that lower courts must view the facts in the light most favorable to the nonmoving party). Accordingly, the Court **DENIES** summary judgment as to past medical bills.

2. Future Lifecare Costs and Loss of Household Services

Finally, Plaintiff moves for summary judgment on the issue of damages for her future lifecare needs. She claims $703,399 in lifecare costs and $173,239 for loss of household services. (ECF No. 59 at 15.) These values are derived from Dr. Bowman's opinion as to her future lifecare needs as valuated by Plaintiff's expert economist, Daniel L. Selby. (*Id.* at 14 (citing ECF Nos. 58-10; 58-11).) Plaintiff argues that because Defendant has not properly disclosed any expert witnesses or provided any expert reports to contradict this information, the figures should be considered undisputed. In response, Defendant submits the testimony of Dr. Brian Dalton, who

---

[5] Plaintiff heavily relies on W. Va. Code § 57-5-4j for the proposition that her affidavit alone is sufficient to establish her entitlement to recover all of her medical expenses. That statute reads, in part, that "[p]roof that medical . . . bills were paid or incurred *because of* any . . . injury shall be prima facie evidence that such bills . . . were necessary and reasonable." § 57-5-4j (emphasis added). While her affidavit states that the bills were incurred "as a result of" the September 19, 2015 accident, the Court is hesitant to conclude that the West Virginia Legislature's intent for this statute was to allow this type of self-serving statement as the only evidence necessary to recover all medical expenses. Her testimony together with Dr. Bowman's affidavit are probably sufficient to be considered prima facie evidence that the expenses were incurred as a result of the accident. However, this does not prevent Defendant from rebutting that evidence at trial as he clearly disagrees with the testimonies' conclusions.

examined Plaintiff on December 2, 2016, (*see* ECF No. 52 at 2), and "testified that he could not state, to a reasonable degree of medical certainty, that Plaintiff would need any future medical treatment" and that he would have to evaluate Plaintiff personally to determine if she would require future surgeries, (ECF No. 65 at 7 (citing ECF No. 65-4 at 2–3)). Because Defendant claims that Dr. Dalton's testimony contradicts Dr. Bowman's report regarding Plaintiff's need for future treatment, he argues that Mr. Selby's valuation is inaccurate. (*See id.* at 7–8.)

In Plaintiff's reply, she avers that "unless Brown is able to come forward with concrete evidence from which a reasonable juror could determine that those costs should not be recovered," she is entitled to summary judgment. (ECF No. 66 at 12.) She argues that Dr. Dalton's opinion should not be considered expert testimony because he was not properly disclosed as an expert witness under Federal Rule of Civil Procedure 26. Even if it is expert testimony, Plaintiff highlights Dr. Dalton's concession in his deposition "that he did not in fact hold any opinions . . . regarding Stratford's future lifecare needs." (*Id.* at 15–16 (citing ECF No. 66-7 at 2–5).) Plaintiff concludes by noting that "Brown's Response is entirely silent with respect to the loss of household services." (*Id.* at 16.)

Dr. Bowman, who was disclosed as Plaintiff's lifecare planner, testifies that he is "a Certified Life Care Planner as certified by the University School of Law." (ECF No. 58-10 at 1.) As part of his report, he "prepared a physical medicine and rehabilitation disability evaluation of" Plaintiff, "set[ing] forth the nature and extent of injuries" she suffered in the subject accident and "set[ing] forth the future medical care and household needs" she will require. (*Id.*) Dr. Bowman's opinions, which are expressed within a reasonable degree of medical certainty, are detailed in twelve pages of evaluative determinations as well as seven specific recommendations

regarding Plaintiff's future medical needs. (*Id.* at 2, 10–24.) Dr. Bowman's report proposes an extensive lifecare plan for Plaintiff, indicating her future needs in the following areas: projected therapeutic modalities, diagnostic/educational testing, orthotics/prosthetics, durable medical items, future medical care routine (including cervical facet joint injections, interventional pain physician visits, and neurosurgery consultations), surgical intervention, and home care and home support services. (*Id.* at 25–34.)

Plaintiff's expert economist, Mr. Selby, is a "certified valuation analyst as issued by the National Association of Certified Valuators and Analysts." (ECF No. 58-11 at 1.) Given his relevant credentials, Mr. Selby prepared a report indicating both the present value of Plaintiff's medical lifecare plan and the prevent value of her needed domestic services. (*Id.* (noting that his opinions "are made within a reasonable degree of economic certainty").) Based on the lifecare plan proffered by Dr. Bowman, Mr. Selby calculated its net present value as $703,399.[6] (*Id.* at 2; *see also id.* at 7–12.) Further, assuming a normal life expectancy through age eighty-four, Mr. Selby calculated the net present value for Plaintiff's loss of household services as $173,239.[7] (*Id.* at 2; *see also id.* at 13–14.)

The Court finds that Defendant has not introduced any concrete evidence contradicting Plaintiff's experts' recommendations or calculations regarding future lifecare or household costs.

---

[6] This net present value figure is broken down as follows:

| | |
|---|---|
| Projected Therapeutic Modalities | $126,583 |
| Diagnostics/Educational Testing | $131,371 |
| Orthotics/Prosthetics | $3,670 |
| Durable Medical Items | $26,020 |
| Future Medical Costs Routine | $415,755 |
| Surgical Interventions | $392,363 |

(ECF No. 58-11 at 6.)

[7] This figure assumes an hourly cost of $13 per hour in 2015 dollars. (*See* ECF No. 58-11 at 13–14.)

17

*See Anderson*, 477 U.S. at 256. Defendant has not provided specific reasons why the lifecare plan provided by Dr. Bowman is unreasonable given Plaintiff's conditions. Defendant attempts to rely on statements made during Dr. Dalton's deposition as concrete evidence that Dr. Bowman's recommendations are erroneous. However, those statements are not part of an expert opinion, *see Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 2:10–CV–524442, 2012 WL 524442, at *6–7 (S.D. W. Va. Feb. 15, 2012), and do not speak directly toward Plaintiff's need for future care. Indeed, Dr. Dalton testified that he could not render such an opinion as to her need for future medical treatment and did not examine Plaintiff regarding whether she would need additional surgeries. (ECF No. 65-4 at 2–3; ECF No. 66-7 at 2–4.) Dr. Dalton also testified that he could not offer an opinion as to whether Plaintiff would need household services as she got older. (ECF No. 66-7 at 6–7.) Thus, his deposition cannot be considered evidence contradicting or calling into doubt the recommendations and calculations of Dr. Bowman and Mr. Selby.

Further, Defendant never disclosed Dr. Dalton as an expert witness as required by Federal Rule of Civil Procedure 26(a)(2). (*See* ECF No. 65-3.) Rule 26(a)(2) provides, in part, that disclosure of an expert witness "must be accompanied by a written report" containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. P. 26(a)(2)(B). Dr. Dalton was not disclosed as an expert witness and, importantly, never submitted a written report as required by the procedural rule. Additionally, Defendant's Rule 26(a) disclosures were never supplemented to include such information. *See* Fed. R. Civ. P. 26(e). When a party fails to provide the requisite information when disclosing an expert witness, "the party is not allowed to use that information

or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, Defendant failed to properly disclose Dr. Dalton as an expert witness and, under Rule 37, cannot submit his deposition as expert testimony even if the Court were inclined to consider it as such. The Court does not find that this omission is substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

Given the evidence proffered by Plaintiff and the absence of rebuttal evidence as to Plaintiff's future lifecare costs and loss of household services, the Court finds that Plaintiff has met her burden in proving that she is entitled to these costs. *See Catrett*, 477 U.S. at 322–23; *Barwick*, 736 F.2d at 958. Even viewing the facts in the light most favorable to Defendant, *see Adickes*, 398 U.S. at 157, there is no genuine dispute of material fact regarding Plaintiff's future medical needs preventing the Court from awarding summary judgment on this issue. Based on the record in this case, no reasonable jury could return a verdict for Defendant on these damages. *See Anderson*, 477 U.S. at 248. Therefore, the Court **GRANTS** summary judgment to Plaintiff as to future lifecare costs in the amount of $703,399 and as to loss of household services in the amount of $173,239.

IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Plaintiff's Motion for Partial Summary Judgment, (ECF No. 58), on the issues of Defendant's breach of the standard of care, Plaintiff's comparative fault, nonparty faulty of Ms. Cantrell, other affirmative defenses specifically asserted, any other matter constituting an avoidance or affirmative defendant, future lifecare costs in the amount of $703,399, and loss of household services in the amount of $173,239. The Court further **DENIES IN PART** the motion as to past medical bills.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 31, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE